IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FANNIE HIGHTOWER,

    Plaintiff,

                            No. 12-3042-JDT-dkv

vs.

CAPITAL ONE AUTO FINANCE
and JOHN DOES 1-20,

    Defendants.

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On December 4, 2012, the plaintiff, Fannie Hightower, filed a *pro se* complaint alleging that the defendant, Capital One Auto Finance ("Capital One"), threatened to repossess her Mercedes C Class automobile, (Compl., D.E. 1, ¶¶ 6, 24,) accompanied by a motion seeking leave to proceed *in forma pauperis*, (Mot., D.E. 2).[1] On December 6, 2012, the court issued an order granting Hightower leave to proceed *in forma pauperis*, (Order, D.E. 3), and referred the case to the *pro se* staff attorney for screening. This case has

_____

    [1] Hightower also named "Does 1-20" as defendants. Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order Referring Cases, D.E. 4.) For the reasons that follow, it is recommended that this case be dismissed.

## I. PROPOSED FINDINGS OF FACT

Hightower's complaint is styled as a "COMPLAINT TO RESTRICT AND PROHIBIT REPOSESSION [sic] AND SALE; VIOLATION OF ELECTRONIC FUND TRANSFERS ACT "EFTA", VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT "FDCPA", VIOLATION OF CONSUMER CREDIT PROTECTION ACT, EXTORTION AND FRAUD." (Compl., D.E. 1 at 1.) Hightower "invokes the jurisdiction of this court pursuant to 28 USC [sic] Section 1343(A)(3)(4), Section 1331, and pursuant to the 14th Amendment, Title 42 USC Section. [sic] 1983, and the Civil Rights Act of 1870." (*Id. at 2.*)

The complaint alleges that Hightower is "a natural person who resides at c/o 4017 Clubview Drive, Memphis [Near 38125] Tennessee republic," (*id.* ¶ 1), and that Capital One is "headquartered in Plano, Texas." (*id.* ¶ 2). Hightower further alleges that her causes of action arose in the Western District of Tennessee, (*id.* at 2), and that she invokes "the powers and protections of the Constitution and Bill of Rights of the State of Tennessee and the Constitution and Bill of Rights of the United States of America." (*id.*)

In her complaint, she alleges that on February 21, 2007, she purchased a Mercedes Class C automobile and financed the purchase with Capital One. (*Id.* ¶ 6.) Pursuant to a conditional sales contract, she was obligated to pay $534.80 per month for seventy-three months. (*Id.*) Hightower made regular payments until August 15, 2012. (Id. ¶ 7.) Hightower further alleges that on July 27, 2012, she attempted to pay the remaining balance of $5,114.98 to Capital One by an electronic funds transfer ("EFT") sent by certified mail, (*id.* ¶ 8, 16), and that Capital One refused to accept the EFT (*id.* ¶ 17), stating that "[w]e are unable to process your check payment as requested." (*Id.*) Attached to the complaint as an exhibit is the front side of an item that appears to be a check from Terry Wayne Green on a Regions Bank account in the amount of $5,114.98, but which is marked "EFT ONLY DISCHARGE OF DEBT," "acct #336564." (*Id.* at 21.) Hightower alleges that Capital One failed to return the alleged EFT instrument. (*Id.* ¶ 10). Hightower contends that Capital One's refusal to credit her account or return the EFT instrument has discharged her debt. (*Id.*) Although Hightower alleges Capital One failed to return the EFT instrument, she also quotes from the letter she received from Capital One that is attached to the complaint as an exhibit which states, "Enclosed is the original check we received." (*Id.* ¶ 17.)

The complaint sets forth the following causes of action: (1) extortion; (2) fraud; (3) violation of the Electronic Funds

Transfer Act; (4) violation of the Fair Debt Collection Practices Act; and (5) violation of Consumer Credit Protection Act. (*Id.* ¶¶ 16-39.)

Hightower seeks compensatory damages in the amount of $5,114.98 and punitive damages in the amount of $150,000. (*Id.* at 18.) She also seeks declaratory relief, (*id.* ¶¶ 12-15), and injunctive relief, (i*d.* ¶¶ 41-48).

In short, the crux of Hightower's complaint is that she financed a Mercedes Class C automobile in 2007, made some payments, drove around in the car for over five years, stopped making payments, and attempted to pay off the remaining debt with an "electronic fund transfer" sent by certified mail. Hightower wants the court to reward her default on the debt by declaring the debt discharged and awarding her more money than the car was worth at the time she stopped making payments.

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 USC 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The Clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. The court is required to screen

*in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

> (i)      is frivolous or malicious;
>
> (ii)      fails to state a claim on which relief may be granted; or
>
> (iii)      seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening.

B.    Standard of Review for Failure to State a Claim

In assessing whether the complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court considers the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Willams v. Curtin* , 631 F.3d 380, 383 (6th Cir. 2011). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual

allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8*(a)(2). "A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)(citation omitted)(internal quotation marks omitted).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted);

*Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.    <u>Subject-Matter Jurisdiction</u>

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender*

*v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 ("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action."

In her complaint, Hightower alleges the following bases for this court's jurisdiction:

> Plaintiff . . . invokes the jurisdiction of this court pursuant to Title 28 USC [sic] Section 1343(A)(3)(4), Section 1331, and pursuant to the 14th Amendment, Title 42 USC Section. [sic] 1983, and the Civil Rights Act of 1870.

(Compl., D.E. 1 at 2.) As discussed below, these federal statutes cited by Hightower are insufficient to confer subject matter jurisdiction.

1. Jurisdiction under 28 U.S.C. § 1343(4)

Hightower first cites as a basis for jurisdiction 28 U.S.C. § 1343(4), which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). The Supreme Court has rejected the position that § 1343(4), now § 1343(a)(4), "encompass[es] all federal statutory suits," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" *id.* at 620.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the

jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621.

In *Chapman*, the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within the meaning of § 1343(a)(4). *Id.* at 623. Similarly, the complaint in this case does not allege a violation of any federal statute providing for the protection of civil rights. Just as the Social Security Act is not an "Act of Congress providing for the protection of civil rights," none of the federal statutes cited in Hightower's complaint provide for the protection of civil rights. Therefore, there is no jurisdiction under 28 U.S.C. § 1343(a)(4).

2. Federal-Question Jurisdiction under 28 U.S.C. § 1331

Hightower also alleges subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Despite a reference to the "Constitution and Bill of Rights of the United States of America" on page 2 of the complaint under the heading "Judicial Notice/Cognizance with Claim of Rights," the complaint does not allege a constitutional violation nor is there any allegation that Capital One has violated any treaty. As discussed below, the complaint does not assert a viable claim arising under any federal statute, either.

a. *Claim that Federal Reserve Notes are Not Money by Law*

Hightower's assertion that "Federal Reserve notes are not money by law" is insufficient to invoke federal-question jurisdiction. The theory that Federal Reserve notes are not legal tender is meritless as a matter of law, as another district court in this circuit has explained:

> In arguing that the system of lending money in the United States is unconstitutional, Plaintiff cites Sections 8 and 10 of Article I in the United States Constitution. . . . Nonetheless, ever since the Supreme Court ruled in "*The Legal-Tender Cases*," in 1884, Courts have consistently held that neither of these provisions of the Constitution renders the country's current money-lending system unconstitutional. *See Julliard v. Greenman* ("*The Legal-Tender Cases*"), 110 U.S. 421, 447-48, 4 S. Ct. 122, 28 L. Ed. 204 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts); *United States v. Ri[f]en*, 577 F.2d 1111, 1113 (8th Cir. 1978) (art. I, § 10 of the Constitution does not "limit Congress' power to declare what shall be legal tender for all debts," and the fact that the type of money in use is neither gold nor silver does <u>not</u> render a loan unconstitutional); *Foret v. Wilson*, 725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States); *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1277 (7th Cir. 1984) (finding untenable plaintiff's argument that federal reserve notes are not "money" because they are not backed by gold and silver specie); *L.R. Nixon v. Phillipoff*, 615 F. Supp. 890 (N.D. Ind. 1985) (finding that plaintiff's [sic] misinterpreted art. I, §§ 8 and 10 of the Constitution, and holding that Section 10 acts only to "remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender"); *Kolb v. Naylor*, 658 F. Supp. 520 (N.D. Iowa 1987) (finding that the loans to plaintiffs constituted the lending of money and the creation of a debt, rather than the creation of money); *United States v. Schiefen*, 926 F. Supp. 877 ([]D.S.D. 1995) (noting that Schiefen's argument that United States currency is unconstitutional "unbacked

paper" has been rejected by numerous courts); *State ex rel. White v. Mack*, 93 Ohio St. 3d 572, 757 N.E.2d 353, 355 (Ohio 2001) (citing *Baird v. Cty. Assessors of Salt Lake & Utah Ctys.*, 779 P.2[2d] 676, 680 (Utah 1989)) (finding that the provision in art. I, § 10 of the United States Constitution is not a directive to states to use only gold or silver coins, but is "merely a restriction preventing states from establishing their own legal tender other than gold or silver coins").

*Nixon v. Phillipoff* provides a thorough analysis of why courts consider federal reserve notes to be a constitutional form of legal tender. *See* 615 F. Supp. 893. In *Nixon*, plaintiff, a *pro se* litigant, sued the individual who had filed a mortgage foreclosure action against him, the clerk of court who had accepted the filing fee for that foreclosure, and the judge who had accepted jurisdiction over the foreclosure. *See id.* at 890. Plaintiff's argument rested, in part, on his assertion that art. I, § 10, clause 1 of the United States Constitution requires a state to accept and recognize only gold and silver coin as legal tender. *See id.* at 893. The court, however, rejected Nixon's argument, concluding:

> Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While this is the conclusoin [sic] which Nixon wants this court to reach (in effect declaring federal reserve notes illegal), it flies in the face of the clear import of § 8, clause 5's unrestricted language. The power to coin money necessarily carries with it the power to declare what is money, and the constitution does not limit Congress to gold and silver coin ... It strains logic and constitutional interpretation to claim that the framers of the constitution sought to limit Congress' power to coin money via an implication derived from a restriction directed not at Congress but at the states.

*Id.* at 893. Moreover, the court explained that,

> Nixon has misinterpreted the import of § 10's prohibition. Courts have uniformly interpreted § 10 as prohibiting states from declaring anything other than gold or silver coin as legal tender ... yet ["*The Legal-Tender Cases*"] do not interpret § 10 as requiring states to accept only gold and silver coin as tender, nor could they, as they both recognize the unrestricted power of Congress to declare what shall constitute legal tender, including bills of credit, treasury notes, and federal reserve notes. In short, § 10 acts only to remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender. Thus ... the states are constitutionally compelled to accept [federal reserve notes] as legal tender.
>
> *Id.*

In this case, where Plaintiff's arguments all rest on his assertion that, according to art. I, §§ 8, and 10 of the constitution, Defendants unconstitutionally created money, his argument fails as a matter of law. Private parties may enter into transactions to trade whatever they agree upon as having equal value, and they are not limited to gold and silver coins. . . . Though Plaintiff asserts that Defendants' loans were unlawful because they did not provide him with any "real, gold or silver backed money" as constitutionally mandated, as evidenced above, Courts have long held that such transactions are both <u>legal</u> and <u>constitutional</u>. Hence, Plaintiff's claims are entirely without merit.

*Rudd v. KeyBank, N.A.*, No. C2-05-CV-0523, 2006 WL 212096, at *4-6

(S.D. Ohio Jan. 25, 2006)(emphasis in original); *see also Rahman El*

*v. First Franklin Fin. Corp.*, No. 09-cv-10622, 2009 WL 3876506, at

*7 (E.D. Mich. Nov. 17, 2009)(same, collecting cases).

    b. *Claim/Jurisdiction under 42 U.S.C. § 1983*

Hightower's claim under 42 U.S.C. § 1983 is insufficient to

invoke federal jurisdiction. In order "[t]o state a claim under §

1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The defendant named in the complaint, Capital One, is a private company. In general, private companies and corporations do not act under color of state law. *See Hayes v. Allstate Ins. Co.*, 95 F. Supp. 2d 832, 836 (W.D. Tenn. 2000)(citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)(holding that action of private, state-regulated insurance company not under color of state law); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982)(holding that private school's decisions not attributable to state despite extensive state regulation of school); *Blum v. Yaretsky*, 457 U.S. 991, 1008-12 (1982)(holding that nursing home not a state actor despite extensive state regulation of the industry); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358-59 (1974)(holding that heavily regulated electric company's decision is not a state action); *Adams v. Vandemark*, 855 F.2d 312, 317 (6th Cir. 1988)(holding private corporation not a state actor despite being subject to state regulation). There are no allegations whatsoever in the complaint that reasonably suggest that Capital One engaged in conduct that could be construed as "state action." Accordingly, the complaint fails to state a claim under 42 U.S.C. § 1983, and 42 U.S.C. § 1983 is not a basis for federal question

jurisdiction. It is recommended that any claim under 42 U.S.C. § 1983 be dismissed for failure to state a claim.

> c. *Claim under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.,(Compl., D.E. 1 ¶¶ 26-30 )*

The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3)

15

a debit or credit to a consumer account.

Here, Hightower alleges in her complaint that she initiated an EFT transfer by sending a paper check marked "EFT ONLY" by certified mail, not by electronic transfer. Her attempted transaction is therefore clearly not covered by the EFTA, and her allegations are insufficient to demonstrate any violation of the EFTA. Accordingly, the complaint fails to state a claim under the EFTA, and the EFTA is not a basis for federal question jurisdiction. It is recommended that any claim under the EFTA be dismissed for failure to state a claim.

      d.   *Claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Compl., D.E. 1 ¶¶ 31-35)*

Hightower alleges that Capital One violated 15 U.S.C. § 1692(d)(5) of the FDCPA, which is also part of the CCPA, by making eight phone calls to her home between October 29, 2012, and November 28, 2012. Hightower fails, however, to state a claim under the FDCPA, because the complaint fails to allege that Capital One is a "debt collector" within the meaning of the statute. (D.E. 1 ¶¶ 2.) The purpose of the FDCPA is "to eliminate abusive debt collection practice by debt collectors." 15 U.S.C. § 1692. Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. § 1692a(6). Capital One, as a creditor, cannot be sued under the FDCPA. *Collins v. Mortg. Elec.*

*Registration Sys., Inc.*, No. 3:11-cv-00264, 2012 WL 610191, at *7 (M.D. Tenn. Feb. 24, 2012)(dismissing FDCPA claim "[b]ecause the instant Defendants are creditors"), *report and recommendation adopted*, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011). Hightower's complaint fails to allege facts demonstrating that Capital One's principal purpose is collecting debts. Accordingly, the complaint fails to state a claim under the FDCPA, and FDCPA is not a basis for federal question jurisdiction. It is recommended that any claim under the FDCPA be dismissed for failure to state a claim.

> d.    *Claim under the Consumer Credit Protection Act,*
>       *15 U.S.C. § 1601 et seq.*

In the count entitled "VIOLATION OF CONSUMER CREDIT PROTECTION ACT," without citation to any specific statute, Hightower alleges that she "has an expectation of privacy to be free from harassing, oppressing and annoying telephone calls within the confines of her home and the defendant's actions invaded and harmed her expectation of privacy." (Compl., D.E. 1 at ¶ 37.) Presumably, Hightower is referring to the phone calls she alleges Capital One made between October 29, 2012, and November 28, 2012, and is referring specifically to 15 U.S.C. § 1692(d)(5), which is part of the FDCPA of the CCPA. For the same reasons previously set forth in connection with Hightower's claims for violation of the FDCPA, Hightower fails to state a claim under the CCPA, and violation of the CCPA is not a basis for federal jurisdiction. It is recommended that any claim under the CCPA be dismissed for failure to state a claim.

In sum, Hightower fails to state in her complaint a viable claim arising under any federal law, and therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

3.  Diversity Jurisdiction

Although the complaint does not allege diversity jurisdiction, the court must also consider whether it has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332. According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." The plaintiff, however, has failed to allege sufficient facts in her complaint to establish diversity jurisdiction. Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a). A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 Fed. App'x 394, 395 (3d Cir. 2009)(per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs.,*

*Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed. 2004). Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Hightower has failed to allege sufficient facts in her complaint to establish diversity jurisdiction. The complaint does not allege the citizenship of any of the parties. The complaint states "Plaintiff Fannie Hightower ("Plaintiff") is a natural person who resides at c/o 4017 Clubview Drive, Memphis [Near 38125] Tennessee republic," but the complaint does not allege her citizenship. (Compl., D.E. 1 ¶ 1.) The complaint alleges that Capital One is headquartered in Plano, Texas, but contains no allegations as to Capital One's place of incorporation or principal place of business. Thus, the court lacks diversity jurisdiction.

D.  The Remaining State-Law Claims

Hightower purports to assert claims under state law for extortion (Compl., D.E. 1 ¶¶ 16-20) and fraud (Compl., D.E. 1. ¶¶

21-25).[2]

1.    Jurisdiction over Remaining State-Law Claims

As discussed above, the court has determined that every federal claim asserted by Hightower should be dismissed for failure to state a claim and lack of federal subject-matter jurisdiction. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state law claims by Moore.  *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").  Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

2.    Dismissal of Remaining State-Law Claims for Failure to State a Claim Pursuant to Rule 12(b)(6)

The state-law claims should also be dismissed for failure to state a claim because the complaint fails to state any plausible claims under state law.

a.    *Claim for Extortion (Compl., D.E. 1 ¶¶ 16-20)*

Hightower attempts to allege a cause of action for extortion. She claims that Capital One engaged in intentional extortion when it "misrepresented that Plaintiff could only discharge debt with certified funds," (*Id.* ¶ 18), and that "said extortion and

---

[2]In the sections entitled "Injunctive Relief" and "Declaratory Relief," there are no factual allegations.  To the extent these sections set forth remedies sought and not causes of actions, these two sections fail to state any plausible claim.

intentional misrepresentations were made by the Defendants with the intent to induce fear in the Plaintiff to deprive her of monies that she did not owe to Defendant," (*Id.*, ¶ 18).

Under Tennessee law, extortion is a crime. Tenn. Code Ann. § 39-14-112. The extortion statute provides:

> Extortion. - (a) A person commits extortion who uses coercion upon another person with the intent to:
> (1)  Obtain property, services, any advantage or immunity; or
> (2)  Restrict unlawfully another's freedom of action.
> (b)  It is an affirmative defense to prosecution for extortion that the person reasonably claimed:
> (1) Appropriate restitution or appropriate indemnification for harm done; or
> (2)  Appropriate compensation for property or lawful services.
> (c) Extortion is a Class D felony.

Tenn. Code Ann. § 39-14-112.

The statute provides no civil remedy. Tennessee courts specifically have held that a civil cause of action for extortion based on the Tennessee criminal extortion statute is not actionable. *See e.g*, *Perry v. Conley*, No. 02A01-9812-CV-00369, 1999 WL 270430, at *4 (Tenn. Ct. App. May 5, 1999) ("[w]e know of no statutory or common law authority-except in states where statutes provide for civil penalties for the crime of extortion-which would allow [the plaintiff] to recover damages for 'extortion'"); *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 99 (Tenn. Ct. App. 1983) ("nor do we know of a civil action - except in states where their statutes provide for civil penalties for the crime of extortion"). It is recommended that Hightower's claim for extortion be dismissed for failure to state a claim.

b.    *Claim for Fraud (Compl., D.E. 1 ¶¶ 21-25)*

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)("'[A]llegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'") (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)).

> [A] complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud.

*United States ex rel. Poteet v. Medtronic, Inc.*, 52 F.3d 503, 518 (6th Cir. 2009)(internal quotation marks omitted). "A court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The HealthCare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)(citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

In order to state a claim for fraud under Tennessee law, a plaintiff must plead the following elements: (1) a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact, (4) the false representation was made knowingly, without belief in its truth, or recklessly; (5) the plaintiff reasonably relied on the misrepresentation; and (6) the plaintiff suffered damages as a

result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008); *see also Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)(grouping the requirements into four elements).

Upon review of the Hightower's complaint, and construing all inferences in Hightower's favor, Hightower has failed to plead a claim of fraud, even under the lenient standard applied to *pro se* plaintiffs. Hightower does not allege that she was damaged as a result of any false statement by Capital One. Capital One advised Hightower that her attempted EFT transaction was not an acceptable form of payment and was not applied to her debt. From the facts before the court, Hightower cannot establish the elements required for fraud under Tennessee law. Hightower has failed to plead a claim for fraud with particularity as required by Rule 9, in that she failed to identify any false statement allegedly made by Capital One, and much less, the time and date of any false representations. It is recommended that Hightower's claim for fraud be dismissed for failure to state a claim.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that this case be dismissed *sua sponte* for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) and for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, and judgment be entered for the defendant.

Respectfully submitted this 10th day of June, 2013.

```
                              s/Diane K. Vescovo
                              DIANE K. VESCOVO
                              UNITED STATES MAGISTRATE JUDGE
```

NOTICE

Within fourteen (14) days after being served with a copy of this
report and recommended disposition, a party may serve and file
written objections to the proposed findings and recommendations.  A
party may respond to another party's objections within fourteen (14)
days after being served with a copy.   FED. R. CIV. P. 72(b)(2).
Failure to file objections within fourteen (14) days may constitute
a waiver of objections, exceptions, and further appeal.